UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| AMERRISQUE TABLADA, ) | |
| ) | |
| PLAINTIFF, ) | |
| ) | |
| v. ) | C.A. No. 1:26-CV-00118-MSM-AEM |
| ) | |
| ROCKET MORTGAGE, LLC; ) | |
| SEVEN DEUCE, LLC, ) | |
| ) | |
| DEFENDANTS. ) | |

MEMORANDUM IN SUPPORT OF
DEFENDANT, ROCKET MORTGAGE, LLC'S MOTION TO DISMISS

The Defendant, Rocket Mortgage, LLC, submits this memorandum in support of its motion to dismiss pursuant to Rule 12(b)(6) of the *Federal Rules of Civil Procedure*.

## I.    INTRODUCTION

Plaintiff, Amerrisque Tablada, has filed two actions challenging the same January 2025 foreclosure sale. In June 2025, Mr. Tablada brought an action filed with this Court, C.A. No. 1:25-cv-00284-MSM-AEM ("Tablada 1"), alleging the same claims raised in this action ("Tablada 2"). In Tablada 1, this Court (McElroy, J.) denied Plaintiff's request for preliminary injunction after extensive briefing and oral argument, including review of two affidavits executed by Rocket Mortgage ("Czartoryski Affidavit") and its counsel, Brock and Scott, PLLC ("Torres Affidavit"), who conducted the foreclosure sale. In addition to the facts plead in the Complaint, this Court may take judicial notice of the facts raised in these affidavits[1]

The Plaintiff's Complaint does not contain any plausible facts to assert a claim for breach of contract against Rocket Mortgage because (1) there is no contractual obligation to strictly

---

[1] In deciding a motion to dismiss, this Court may consider extrinsic evidence "whose authenticity is not questioned, which were attached or incorporated into the Complaint, or which are the proper subject of judicial notice." *Freeman v. J.P. Morgan Bank & Co*., C.A. No. 1:20-cv-00087-MSM-PAS, 2022 WL 951856, at n. 13 (D.R.I. Mar. 30, 2022) (citing *Freeman v. Town of Hudson*, 714 F.3d 29, 36 (1st Cir. 2013).

comply with the HUD regulations; (2) the Default Notice dated August 22, 2024 is strictly compliant with the terms of the Mortgage; and (3) the Notice of Sale dated November 27, 2024 is strictly compliant with R.I.G.L. § 34-27-4. As such, the Plaintiff's Complaint should be dismissed because it fails to state a claim upon which relief can be granted.

## II.    FACTUAL ALLEGATIONS

### A.  Tablada's Mortgage

Mr. Tablada was the former owner and mortgagor of the subject property, 63 West Shannock Road, Richmond, Rhode Island, and granted the first mortgage dated November 13, 2019 as security for a promissory note in the amount of $278,891.00. *See Compl. Ex A – Note; Ex B – Mortg.* The Mortgage was granted to Mortgage Electronic Registration Systems, Inc. as nominee for Quicken Loans Inc. *See Ex B* at 1-2. Thereafter, the Mortgage was subsequently transferred to Rocket Mortgage by recorded assignment of mortgage dated November 9, 2021. *See Tablada 1, ECF 9-1 –* Czartoryski Aff. at ¶ 6. While the Mortgage is insured by the Federal Housing Administration (FHA) as a part of the U.S. Department of Housing and Urban Development (HUD), the Mortgage does not contain any contractual provisions that require compliance with the federal regulations promulgated by HUD. *See Tablada 1, ECF 9-1* at ¶ 1; *see generally Compl. Ex B*).

### B.  Tablada's Partial Claim Mortgage

On December 2, 2023, Mr. Tablada granted a Partial Claim Mortgage to HUD in the amount of $54,743.90, which was applied to the loan account to cure a non-payment default that occurred in December 2021. *See Tablada 1, ECF 9-1* at ¶ 7. The funds are authorized by the National Housing Act, codified under 12 U.S.C. § 1715u, which sets maximum limits to any partial claim "not to exceed an amount equivalent to 30 percent of the unpaid principal balance of the mortgage and any costs that are approved by the Secretary…" 12 U.S.C. § 1715u(b)(2). The

2

Housing Act explicitly prohibits judicial review of HUD's implementation of these provisions. 12 U.S.C. § 1715u(d). Likewise, any actions taken in relation to payment of partial claims or for failure to act is statutorily exempted from judicial review. 12 U.S.C. § 1710(a)(2).

HUD has instituted servicing guidelines under various Mortgagee Letters, defining qualifications for the partial claim funds. Effective May 1, 2024, HUD defines a Borrower in imminent default as one who "previously qualified for or used HAF funds to reinstate their Mortgage; *and* attests that they cannot resume their monthly Mortgage Payments." *Mortgagee Letter 2024-02 (HUDML)*, 2024 WL 734495, at *5 (Feb. 21, 2024).[2] While no income documentation is necessary to qualify, as a critical part of the eligibility review process, the Borrower must "indicate[] they have the ability to make the Borrower's portion of the monthly Mortgage Payment." *Id.* at *7. Eligibility is further limited "until 36 months after the date the Borrower previously executed Payment Supplement Documents." *Id.* at *8.[3]

## C. Rocket Mortgage's Foreclosure Sale

Mr. Tablada admits that he defaulted on his monthly payments again on or about May 1, 2024, although he claims that he was entitled to an additional partial claim of $21,762.62 at the time of the default. *See Compl.* at 16, ¶ 47. On August 22, 2024, Rocket Mortgage mailed a contractual Default Notice. *See Compl. Ex D – Default Letter.* The Default Letter specifies the reason for default is non-payment, provides a specified date of October 11, 2024 to cure the default by making payment of $8,411.30 plus any additional charges, and that failure to cure may result in acceleration and sale of the Subject Property. *See id.* The Default Notice also states that Mr. Tablada has the right to reinstate after acceleration and the right to bring a court action to assert

---

[2] The guidelines delay implementation of Mortgagee Letter 2024-02 to "no later than January 1, 2025." *Id.*.

[3] The guidelines define a "Payment Supplement" as "a non-interest bearing Note, Subordinate Mortgage, and a Payment Supplement Agreement, which is a rider to and is incorporated by reference into the Payment Supplement promissory Note, given in favor of the Secretary." *Id.* at *7.

Mem. in Supp. of Def's Mot. to Dismiss
*Tablada v. Rocket Mortgage, LLC*                    C.A. No. 1:26-cv-00118-MSM-AEM

the non-existence of a default or any other defense to acceleration and sale, as proscribed by the terms of the Mortgage. *See id.*

Mr. Tablada does not allege that he ever contacted Rocket Mortgage to request loss mitigation or to cure the default. *See generally Compl.* On November 27, 2024, Rocket Mortgage, through its counsel, mailed a notice of foreclosure sale, scheduling a public auction for January 24, 2025 at 1:00 P.M. *See Compl. Ex. C* – Notice of Sale. Notice of the Foreclosure Sale was published for three successive weeks, January 2nd, 9th, and 16th, leading up to the sale date. *See Tablada 1, ECF 9-2* – Torres Aff., ¶ 9, Ex. 2 - Publications. After competitive bidding at the auction sale, conducted by the Firm's licensed auctioneer, the Subject Property was sold for $329,000.00 to a third party, Benjamin Ricci. *See id.*, ¶¶ 11-12. Mr. Ricci subsequently refused to honor his bid after his counsel advised that he would not close on the sale due to the Borrower's threats of litigation. *See id.*, ¶ 13. As a result, the Firm contracted with the next highest, willing bidder, Seven Deuce, LLC, for its bid of $300,000.00. *See id.*, ¶ 15.

## D. Tablada's Complaint

Mr. Tablada's 45-page Complaint ironically contains very few factual allegations, instead mostly relying on conclusory allegations of law and segments of regulatory provisions. The Complaint begins by describing Mr. Tablada's Mortgage. *See* Compl. at 1-2, ¶¶ 3-8.[4] Mr. Tablada admits that Rocket Mortgage was assigned the Mortgage and is the loan servicer for his loan. *Id.* at 2, ¶ 10. Mr. Tablada alleges without evidence that the Mortgage is owned by the Government National Mortgage Association (Ginnie Mae) as part of a transfer "[s]hortly after November 13, 2019" involving a mortgage-backed securities (MBS) pool of loans. *See id.* at 4, ¶¶ 17. While the

---

[4] The Complaint duplicates paragraph numbers 9 and 56. *See Compl.* at 2, 18). The Complaint also skips paragraphs 6, 7, and 95. *See id.* at 2, 23-24. For clarity, Rocket Mortgage will list the page number and the paragraph number as written in the Complaint when referencing this pleading.

4

Mem. in Supp. of Def's Mot. to Dismiss
*Tablada v. Rocket Mortgage, LLC*                    C.A. No. 1:26-cv-00118-MSM-AEM

Complaint alleges that Rocket Mortgage is obligated to comply with all HUD regulations as a condition of FHA, HUD and/or Ginnie Mae's agreement insuring this loan, Mr. Tablada cannot point to any contractual terms in the Mortgage. *See id.* at 5, ¶¶ 23-24.

**Counts I & II: Breach of Contract and Injunctive Relief**

First, the Complaint generally alleges breach of contract for Rocket Mortgage's failure to strictly comply with the terms of the Mortgage. The Complaint alleges that Rocket Mortgage did not conduct a "face-to-face meeting" as promulgated in 24 C.F.R. § 203.604(b). *See id.* at 17, ¶ 50-51. It also claims that Rocket Mortgage never made any phone calls to the borrower, citing 12 C.F.R. § 1024.39. *See id.* at 17-18, ¶¶ 53-56. Although these alleged violations stem from regulatory authority, Mr. Tablada claims that failure to strictly comply with the regulations is equivalent to a breach of contract. *See id.* at 18, ¶¶ 56-57.

Second, the Complaint alleges that the Notice of Sale is deficient under R.I.G.L. § 34-27-4 because it was not signed, it was mailed by the law firm's mail vendor, MailPro Solutions, and it was mailed by certified mail electronic receipt requested. *See id.* at 18-19, ¶¶ 58-67. Mr. Tablada also alleges, without any evidence, that the Notice of Sale "was deposited into the United States mail in Fort Lauderdale, Florida by MailPro Solutions within twenty nine days of the first advertisement in the Providence Journal, which ran on January 2, 2025." *Id.* at 20, ¶ 69.

Third, the Complaint asserts that the Default Notice is deficient because it was mailed by Rocket Mortgage's mail vendor, Covius Print Ready Services. *See id.* at 21, ¶¶ 75-79. Mr. Tablada claims that the Default Notice is deficient because it contains late charges of $300.18, an unspecified charge of $25.00, and corporate advance balance of $177.78. *See id.* at 21, ¶¶ 80-83. The Complaint also claims that the letter is deficient because it "falsely stated that failure to cure would result in foreclosure proceeding in which Rocket Mortgage … would pursue a deficiency

5

judgment." *Id.* at 22, ¶ 85. The Complaint then inaccurately claims that the Default Notice states the deadline to cure the default is "on or about a date specified as October 11, 2024 may result in acceleration and sale." *See id.* at 22, ¶ 86. In fact, the Default Notice states that payment to cure the default must be made "by 10/11/2024…" *See Compl. Ex. D.*

Lastly, the Complaint alleges that the Note was never accelerated. *See id.* at 23, ¶ 92. Similar to his claims against the Default Notice, Mr. Tablada claims that the monthly statements from May 2024 through December 2024 included unauthorized charges of $300.18 in late fees, a $25.00 fee, and various escrow and corporate advances. *See id.* at 23-35, ¶¶ 93-150. Mr. Tablada asserts a right to injunctive relief restraining the transfer of the Property by foreclosure deed to the Third Party Buyer, which has been denied by this Court. *See id.* at 41, ¶¶ 171-74.

**Counts III: Breach of the HUD Regulations & Breach of the Covenant of Good Faith and [Fair] Dealing**

As an alternative theory, Mr. Tablada asserts a separate count alleging violation of the HUD regulations. *See id.* at 43, ¶ 178. Citing paragraph 22 of the Mortgage, the Complaint alleges that strict compliance with the HUD regulations is a condition precedent because it is "applicable law" as defined in the Mortgage. *See id.* at 42-43, ¶¶ 176-77. However, Mr. Tablada does not explain how the HUD regulations are applicable in the context of mailing the notice of default "prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 17 unless Applicable Law provides otherwise)." *See Compl. Ex. B* at 14, ¶ 22. Instead, the Complaint leaps to a conclusory allegation that all HUD regulations must be applicable because they are federal regulations involving the loan servicer's loss mitigation protocols. *See Compl.* at 43, ¶¶ 177-78.

6

### III.    STANDARD OF REVIEW

When reviewing a motion to dismiss for failure to state a claim for which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), the Court assumes "the truth of all well-plead facts and give the plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp*., 496 F.3d 1, 5 (1st Cir. 2007). To avoid dismissal, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Garcia-Catalan v. U.S.*, 734 F.3d 100, 102 (1st Cir. 2013) (quoting Fed. R. Civ. P. 8(a)(2)). Although the plaintiff does not need to show a likelihood of success, their complaint must supply "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 102-03 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Thus to achieve this, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A deficient complaint should be dismissed "when a plaintiff fails to allege 'enough facts to state a claim to relief that is plausible on its face.'" *Lister v. Bank of America, N.A.*, 8 F.Supp 3d 74, 78 (D.R.I. March 28, 2014) (quoting *Twombly*, 550 U.S. at 570).

### IV.    ARGUMENT

Here, the Complaint should be dismissed because it fails to allege any plausible facts that Rocket Mortgage committed breach of contract or violated HUD regulations. Neither does Mr. Tablada have standing to assert a private right of action under the National Housing Act. For these reasons, Plaintiffs' complaint must be dismissed for failure to state a claim upon which relief may be granted.

1. **The Complaint does not plead any plausible facts to assert a claim for Breach of Contract because the Mortgage does not contain any contractual provision that requires compliance with HUD regulations.**

The Complaint does not plead any plausible facts creating a contractual obligation with Mr. Tablada to strictly comply with HUD regulations. *See Dan-Harry v. PNC Bank, N.A.*, C.A. No. 17-136 WES, 2018WL 1083581 (D.R.I. Feb. 27, 2018). Unlike the FHA mortgage in *Dan-Harry*, the Mortgage, here, does not contain any express contractual provision that "unambiguously requires compliance with the HUD regulations, including 24 C.F.R. § 203.604(b), as a condition precedent to foreclosure." *See id.*, at *1; *compare with Compl. Ex. B – Mortg.* at 14, ¶ 22. Mr. Tablada's reliance on the language in paragraph 22 of the Mortgage is misplaced because the HUD regulations are not applicable to the Default Notice or acceleration of the loan. Absent an express contractual provision similar to the paragraph 9(d) of the FHA mortgage, there is no contractual obligation to strictly comply with the HUD regulations or to offer a loan modification. *See Miller v. Wells Fargo Bank, N.A.*, 160 A.3d 975, 980-81 (R.I. 2017). Therefore, even taking the factual assertions in the Complaint as true for the purposes of this motion, Rocket Mortgage's alleged noncompliance with the HUD regulations would not give rise to a contractual obligation.

The Complaint does not allege that Mr. Tablada took any action prior to the foreclosure to seek a loss mitigation option. Although he asserts an entitlement to additional partial claims funds, Mr. Tablada does not show why he would be eligible without ever notifying Rocket Mortgage of either his intent to apply for loss mitigation or an attestation of his inability to make payments under the recently modified loan. *See Mortgagee Letter 2024-02*, 2024 WL 734495, at *7. To the contrary, a unilateral modification applying additional partial claims funds would have violated the explicit terms of Mortgagee Letter 2024-02. *See id.* Neither is it Rocket Mortgage's decision to grant the partial claims mortgage because it requires the authorization of HUD. Per the servicing guidelines, HUD would likely have denied additional partial claim funds because the recent December 2023 Partial Claim Mortgage disqualified him for additional partial claim funds. *See id.*

8

at *8. Whether Mr. Tablada believes HUD's regulatory provisions to be overburdensome or somehow inapplicable to him is irrelevant because Congress gave HUD the specific authorization to define the eligibility requirements to engage in loss mitigation. *See* 12 U.S.C. § 1715u(a).

Likewise, the claim for breach of contract pursuant to 12 C.F.R. § 1024.41 has no merit because the regulations are not part of the Mortgage contract. The relevant regulatory provision states: "A servicer shall not make the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process unless: (i) A borrower's loan obligation is more than 120 days delinquent[.]" 12 C.F.R. § 1024.41(f)(1). The phrase "first notice or filing" has been further clarified by HUD to mean simply the notice of sale in a nonjudicial foreclosure or the complaint in a judicial foreclosure. *See id.*, comment 41(f)(1)(i)-(ii).[5] When the foreclosure procedure under applicable State law does not require a court action or proceeding, a document is considered the first notice or filing if it is the earliest document required to be recorded or published to initiate the foreclosure process.  HUD clarified this in its 2021 official interpretations:

> As noted in that comment, whether a document is considered the first notice or filing is determined on the basis of foreclosure procedure under the applicable State law. Thus, certain State-mandated documents might be considered the first notice or filing and some might not. To the extent State-mandated documents, such as breach notices or acceleration notices are not the first notice or filing, nothing in this rule prevents servicers from sending them.

86 FR 34848-01, 2021 WL 2662230, at *34882 (Jun 30, 2021). Therefore, Mr. Tablada's claims for breach of contract for failure to comply with the HUD regulations under Counts I-III of the Complaint must fail as a matter of law.

---

[5] "(i) Where foreclosure procedure requires a court action or proceeding, a document is considered the first notice or filing if it is the earliest document required to be filed with a court or other judicial body to commence the action or proceeding (e.g., a complaint, petition, order to docket, or notice of hearing). (ii) Where foreclosure procedure does not require an action or court proceeding, such as under a power of sale, a document is considered the first notice or filing if it is the earliest document required to be recorded or published to initiate the foreclosure process." *Id.*

9

2.   **The Complaint does not plead any plausible facts to assert a claim for Breach of Contract because the Default Notice dated August 22, 2024 is strictly compliant with the terms of the Mortgage.**

The Rhode Island Supreme Court has held that "[a]s a matter of contract law, strict compliance with the requirements contained in paragraph 22 is a condition precedent to acceleration and a valid foreclosure sale." *Woel v. Christiana Tr., as Tr. for Stanwich Mortg. Loan Tr. Series 2017-17*, 228 A.3d 339, 345 (R.I. 2020). More recently, in *Degasparre v. Fay Servicing, LLC*, the Supreme Court distinguished a valid notice in strict compliance with paragraph 22 from the invalid notice in *Woel*. 288 A.3d 146, 153-54 (R.I. 2023).

Here, the Default Notice mirrors the contractual language contained in paragraph 22 of the Mortgage, including the right to reinstate after acceleration and the right to bring a court action. *See Compl. Ex D – Default Notice*. The Default Notice states that (a) the loan is in default for failure to pay amounts due, (b) to cure the default a payment of $8,411.30 must be made, (c) by October 11, 2024, and (d) failure to cure the default may result in acceleration of the sums secured by the Security Instrument and sale of the property. *See id.* The Default Notice also states: "You have the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense to acceleration and sale." *See id.* The language used in the Default Notice unequivocally mirrors the required contractual language contained in paragraph 22 of the Mortgage. Thus, just as in *Degasparre* the Default Notice, here, satisfies the contractual condition precedent established in *Woel*.

Mr. Tablada's claim that additional charges were added to the total amount to cure the default has no legal relevance because these charges are authorized by the Mortgage contract. *See U.S. Bank Nat'l Assn as Tr. for Residential Asset Securities Corp. v. Torres*, 559 F.Supp.3d 62, 66 (D.R.I. Sept 13, 2021); *Compl.* at 21-22, ¶¶ 80-84. Indeed, "[t]he holding of *Woel* *** is limited

10

to finding a Default Notice invalid because it failed to explicitly include a "right to reinstate." *Torres*, 559 F.Supp.3d at 66. In the Mortgage, Tablada agreed to "pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note." *See Compl. Ex B* at 4, ¶ 1. The Mortgage further requires Tablada to "pay funds for Escrow Items pursuant to Section 3." *See id.*, at 5, ¶ 3. The event of default also triggers Paragraph 9 of the Mortgage, which Plaintiff "may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument." *See id.*, at 8, ¶ 9. This includes property inspection, preservation, and valuation fees, and "paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument." *See id.* These amounts "shall become additional debt of Borrower secured by this Security Instrument," and "shall be payable, with such interest, upon notice from Lender to Borrower requesting payment." *See id.*, at 9, ¶ 9. There is no contractual provision that requires the notice be mailed by a law firm or any other entity. Therefore, this Court should dismiss Mr. Tablada's claim of breach of contract for lack of strict compliance in the Default Notice under Counts I-II.

3.  **The Complaint does not plead any plausible facts to assert a claim for Breach of Contract because the Notice of Sale dated November 27, 2024 is strictly compliant with R.I.G.L. § 34-27-4.**

Rhode Island General Laws § 34-27-4(b) requires that notice of sale to an individual consumer mortgagor be mailed within thirty days "by certified mail return receipt requested at the address of the real estate and, if different, at the mortgagor's address listed with the tax assessor's office …" Subsection (a) of the statute also provides that notice of the sale be published for three successive weeks prior to the sale, with the first publication being at least 21 days prior to the sale,

and the third publication being no fewer than 7 days prior to the sale but no more than 14 days prior to the sale.

Here, Mr. Tablada does not allege any plausible facts that would establish noncompliance under the statute. The Complaint merely alleges that the Notice of Sale was not mailed by the law firm but instead mailed by its mail vendor. *See Compl.* at 18-20, ¶¶ 58-69. Nothing in the statute or the Mortgage disqualifies mailing by the mortgagee's agent, counsel, or a mail vendor. Neither is mailing by electronic receipt requested any different from mailing a physical green card.

The undisputed facts indicate that the Notice of Sale was mailed on November 27th, which was 36 days prior to the first publication that ran on January 2, 2025 in compliance with subsection (b). *See Torres Aff.*, ¶ 7-9, Ex. 1-2. Publications ran two additional weeks, January 9th and 16th, leading up to the public auction sale held on January 24th, an eight-day period separating the third publication and the sale date. *See Torres Aff.*, ¶ 9. Likewise, the Complaint does not allege any plausible facts that the publications were outside of the timelines provided in subsection (a) of the statute. As a result, this Court should dismiss Count I because the Complaint does not allege any plausible facts to assert a claim for breach of contract for failure to strictly comply with R.I.G.L. § 34-27-4 under Counts I-II.

4. **Plaintiff lacks standing to support his HUD regulatory claims because there is no private right of action under Section 230 of the National Housing Act.**

Even if Mr. Tablada could show plausible facts evidencing his eligibility to partial claim funds, he cannot establish a reasonable likelihood of success on the merits because he does not have standing to assert a private right of action under the National Housing Act. Had Mr. Tablada included a claim against HUD, it would undoubtedly fail because Congress explicitly exempted the actions or inactions of HUD from judicial oversight relative to its statutory authority to create and enforce the provisions of the National Housing Act. *See* 12 U.S.C. § 1715u(d), 1710(a)(2).

12

Instead, Mr. Tablada attempts to sidestep the clear statutory language of the Act by seeking to enforce the FHA guidelines against HUD's servicing agent, essentially stepping into the shoes of HUD to seek legal recourse against Rocket Mortgage.

The Fourth Circuit Court of Appeals has held that Congress did not intend to imply a private cause of action under § 1715u. *In re Miller*, 124 Fed. Appx. 152, 155 (4th Cir. 2005). The Fourth Circuit reasoned that the clear an unambiguous language of the statute evidences "Congress' intent not to require the HUD Secretary to provide a cause of action as a loss mitigation alternative for single family homeowners like Miller." *Id.* (citing 12 U.S.C. § 1715u(f): "[n]o provision of this chapter, *or any other law*, shall be construed to require the Secretary to provide an alternative to foreclosure for mortgagees on 1- to 4-family residences.") (italics in the original).

Similarly, the Seventh Circuit Court of Appeals held that Congress did not intend to make the partial claim program mandatory. *See Ferrell v. U.S. Dep't of Hous. & Urban Dev.*, 186 F.3d 805, 813 (7th Cir. 1999). Similar to the current iteration of the statute, the 1999 version provided that the "Secretary *may* establish a program for payment of a partial claim to a mortgagee *that agrees* to apply the claim amount to payment of a mortgage…" *See id.* (citing 12 U.S.C. § 1715u(b)(1)) (emphasis in original). The Seventh Circuit reasoned that "[t]his statutory language does not support the plaintiffs' argument that HUD is empowered to structure a partial claim program as a mandatory program." *Id.* Additionally, before a mortgagee can administer the program, "[t]he Secretary must supply sufficient economic incentive to make acceptance of the partial payment advantageous to the mortgagee." *Id.* In other words, the statute cannot be mandatory because HUD must be willing to reimburse the mortgagee through partial claim funds, which is outside of the mortgagee's control.

13

Without a private right of action to enforce the provisions of the HUD guidelines, Mr. Tablada's claims must fail because he lacks any standing. As a result, this Court should deny Plaintiff's motion for preliminary injunction because he has no standing to enforce the FHA guidelines.

## V.  CONCLUSION

Mr. Tablada's Complaint fails to allege any plausible facts to assert a claim for breach of contract against Rocket Mortgage or to invoke a private right of action under the National Housing Act. For the foregoing reasons, Rocket Mortgage respectfully requests that this Court dismiss the Complaint and grant such other relief as the Court deems just and proper.

Respectfully submitted by,
**DEFENDANT,**
**Rocket Mortgage LLC,**
By Its Attorneys,

Dated: March 24, 2026

*/s/ Rowdy M. Cloud*
Rowdy M. Cloud, Esq. (#9383)
Brock and Scott, PLLC
23 Messenger Street, Second Floor
Plainville, MA 02762
Tel: (508) 379-4516
rowdy.cloud@brockandscott.com

## CERTIFICATE OF SERVICE

I hereby certify that, on the 24th day of March 2026, I caused a copy of the foregoing document to be filed and served via the ECF system on the parties registered to receive electronic service in this matter. I further certify that a copy of said document to be served via electronic mail to:

John B. Ennis
Jbelaw75@gmail.com

The document electronically filed is available for viewing and/or downloading form the ECF system.

*/s/ Rowdy M. Cloud*
Rowdy M. Cloud, Esq. (#9383)

Mem. in Supp. of Def's Mot. to Dismiss
*Tablada v. Rocket Mortgage, LLC*                    C.A. No. 1:26-cv-00118-MSM-AEM